**NOT FOR PUBLICATION**                                        **CLOSED**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JERRY D. GOLDSTEIN, LLC, | : |
| | : |
| Plaintiff, | : |
| | : Civil Case No. 13-5294 (FSH) |
| v. | : |
| | : **OPINION & ORDER** |
| MEGAPATH CORPORATION, | : |
| | : Date: May 20, 2014 |
| Defendant. | : |
| | : |

**HOCHBERG, District Judge:**

This matter comes before the Court upon Defendant Megapath Corporation's motion to dismiss and compel arbitration (Dkt. No. 12).  The Court has reviewed the submissions of the parties and considers the motions pursuant to Federal Rule of Civil Procedure 78.

I.       **BACKGROUND**[1]

Plaintiff Jerry D. Goldstein, L.L.C. ("Plaintiff" or "JDG") is a law firm that provides services in New Jersey and Connecticut.  Megapath Corporation ("Defendant" or "Megapath") is a successor corporation to Covad Corporation ("Covad").  Both Covad and Megapath provided or currently provide telephone and internet services.

Plaintiff filed its initial complaint on July 26, 2013 in Superior Court of New Jersey, Passaic County, Law Division.  (Dkt. No. 1-1.)  Thereafter, Defendant removed the matter to federal court invoking the diversity jurisdiction of this Court.   On September 11, 2013, Defendant moved to dismiss this matter and compel arbitration.  (Dkt. No. 4.)  On September 23, 2013, Plaintiff sought leave to file an amended complaint.  (Dkt. Nos. 5-6.)  The Court granted

---

[1] These facts are taken from Plaintiff's amended complaint, unless otherwise noted.

that request and terminated the Defendant's motion to dismiss.  (Dkt. No. 10.)  On November 6, 2013, Plaintiff filed an amended complaint.  (Dkt. No. 11.)  On November 20, 2013, Defendant again moved to dismiss and compel arbitration.  (Dkt. No. 12.)  On April 15, 2014, this matter was reassigned to the undersigned.  (Dkt. No. 15.)

### a.  JDG's Allegations

JDG makes three basic allegations against Megapath.  First, JDG alleges that Megapath overcharged it for services.  Second, JDG alleges that Megapath failed to provide it with the contracted services for about a month between October and November 2012 resulting in various damages.  Finally, JDG alleges that it complained to Megapath about its service and costs from 2010 until the filing of this lawsuit, and Megapath continually made promises related to service costs and credits that were never fulfilled.  Based on these allegations, JDG asserts various causes of action including "breach of contract"; "fraud, misrepresentation, deceptive practices"; "consumer fraud"; "tortious interference"; and "breach of covenant to act in good faith."

### b.  The Contracts at Issue

In 2007, Plaintiff signed a contract for services with Covad.  (Mudge Affidavit, Ex. A.)  Section 4.0 of the agreement provided that "[t]he term of this Agreement will run from the Effective Date until the end of the term described in each applicable Appendix."  (*Id*. at 2.)  The relevant appendix provided for an initial term of one, two, or three years.  (*Id*. at 5-6.)  However, the contract also stated that "[a]t the end of the applicable term, Covad will continue to provide VoIP Service on a month-to-month basis at Covad's then current prices and terms (or if Covad does not give new terms to Customer, on the terms and conditions contained herein) until either Customer or Covad gives the other a 30-day written termination notice."  (*Id*.)

2

Section 9.0 of the Agreement contains an arbitration clause. The clause states that binding arbitration in California is the sole and exclusive remedy for "Disputes" between the parties. (*Id*. at 3.) The agreement defines a "Dispute" as "any dispute, controversy, or claim arising out of or relating to (i) this Agreement, its interpretation, or the breach, termination, applicability, or validity thereof." (*Id*.)

On September 7, 2012, Plaintiff sent via facsimile a signed service order to Megapath requesting services to be provided under new terms. (Mudge Affidavit, Ex. B.) That signed service order was subject to the terms and conditions found within Megapath's corporate policies. (*Id*. at 2.) Megapath accepted the agreement by providing services to Plaintiff. (*Id*. at 10-11 (Section 24).) Section 18 of the terms and conditions contains a mandatory arbitration clause. (*Id*. at 9-10.) That clause designated California as the location for binding arbitration for "[a]ny disputes arising from the interpretation of or performance of this Agreement or any Attachments." (*Id*.)

Both contracts contain clauses that state the agreements are the complete and exclusive statement of the parties' understanding and supersede all previous written and oral agreements (Ex. A at 4; Ex. B at 10); both contracts state that they can only be modified if the modification is in writing and signed (*id*); and both contracts are governed by California law (Ex. A at 3; Ex. B at 9).

## II.   LEGAL STANDARD

Defendant moves to dismiss and compel arbitration under Section 4 of the Federal Arbitration Act.

Section 4 states:

> A party aggrieved by the alleged failure, neglect, or refusal of
> another to arbitrate under a written agreement for arbitration may

> petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4.  "The FAA makes agreements to arbitrate enforceable to the same extent as other contracts.  Thus, federal law presumptively favors the enforcement of arbitration agreements." *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 178 (3d Cir. 1999) (internal citation omitted).

"A motion to compel arbitration calls for a two-step inquiry into (1) whether a valid agreement to arbitrate exists and (2) whether the particular dispute falls within the scope of that agreement." *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005).  "When a dispute consists of several claims, the court must determine on an issue-by-issue basis whether a party bears a duty to arbitrate."  *Id*.  "When determining both the existence and the scope of an arbitration agreement, there is a presumption in favor of arbitrability."  *Id*.  A motion to compel arbitration may be granted when there is "no genuine issue of fact concerning the formation of the agreement to arbitrate."  *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 159 (3d Cir. 2009).  "In making this determination, the party opposing arbitration is entitled to the benefit of all reasonable doubts and inferences that may arise."  *Id*. (internal quotation marks omitted).

### III.        DISCUSSION

Defendant argues that Plaintiff signed two contracts for services that require arbitration for any disputes that arise from the contract or Defendant's services.  Plaintiff does not dispute that it signed the two agreements cited by Defendant.  Instead, Plaintiff makes two arguments: (i) that there is a period of time when the first agreement was expired and the second agreement had yet to be signed where it is not bound to arbitrate and (ii) that the agreements are unconscionable and, therefore, unenforceable.

With respect to Plaintiff's first argument, the 2007 agreement was still in place even after the initial term expired.  By its own terms, the 2007 agreement stated that the terms and conditions of the agreement would continue on a month-to-month basis until either party gave 30 days' written notice.  Plaintiff did not plead that it gave written notice to Defendant or terminated the agreement in accordance with its terms.  Starting in September 2012, the second agreement superseded the 2007 agreement and also contained a mandatory arbitration clause.  Therefore, arbitration is required under both contracts for the entire disputed period.

Plaintiff's second argument is similarly without merit.  Under California law, invalidating an arbitration agreement involves a two part showing:  "Unconscionability requires a showing of both procedural unconscionability and substantive unconscionability.  Both components must be present, but not in the same degree; by the use of a sliding scale, a greater showing of procedural or substantive unconscionability will require less of a showing of the other to invalidate the claim."  *Nelsen v. Legacy Partners Residential, Inc.*, 207 Cal. App. 4th 1115, 1124 (2012), *as modified on denial of reh'g* (Aug. 14, 2012), *review denied* (Oct. 31, 2012).  "[T]he party opposing arbitration . . . ha[s] the burden of proving that the arbitration provision [is] unconscionable."  *Id*.  Plaintiff has not met its burden to show that any portions of the contract are procedurally or substantively unconscionable.  Indeed, Plaintiff does not point out any specific portion of either agreement that it alleges is unconscionable.  The contracts in question were entered into between Defendant and JDG, a law firm.  Moreover, the contracts were signed by Jerry Goldstein, Plaintiff's attorney in this matter.  Plaintiff is a sophisticated entity familiar with contracts.  The agreements were signed by an attorney.  Under such circumstances, a party would be "hard-pressed" to argue an arbitration clause is unconscionable.  *See Hautz Const., LLC v. H & M Dep't Store*, Civ. No. 12-3478, 2012 WL 5880370, at *7 (D.N.J. Nov. 20, 2012)

5

*reconsideration denied*, 2013 WL 393869 (D.N.J. Jan. 30, 2013).  Here, the Court finds that the arbitration agreements are not unconscionable and are enforceable against Plaintiff.

Finally, there is no doubt that the disputes and allegations raised by Plaintiff fall within the scope of the arbitration clauses.  Both arbitration agreements cover disputes that arise or relate to the agreement for services between Plaintiff and Defendant.  Plaintiff's allegations focus on the amounts charged for Defendant's services and Defendant's failure to provide service during a portion of 2012.  Therefore, Plaintiff's allegations fall squarely within the ambit of the agreements' respective arbitration clauses.

The Court finds that there are two valid agreements to arbitrate and that the disputes raised by Plaintiff fall within the scope of those agreements.  Therefore, the Court will dismiss Plaintiff's complaint.  *See Hautz*, 2012 WL 5880370, at *16-*17 (dismissing a complaint when the forum selection clause of an arbitration agreement required arbitration outside the district court's district).  Should Plaintiff wish to pursue its claims, it needs to initiate arbitration proceedings as required by the agreements discussed above.

## IV.    CONCLUSION & ORDER

For the reasons stated above,

**IT IS** on this 20th day of May, 2014,

**ORDERED** that Defendant's motion to dismiss and compel arbitration (Dkt. No. 12) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's amended complaint is **DISMISSED**; and it is further

**ORDERED** that the Clerk of the Court **CLOSE** this case.

**SO ORDERED.**

 **/s/ Hon. Faith S. Hochberg_____**
 **Hon. Faith S. Hochberg, U.S.D.J.**

6